# IN THE STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# SOUTHERN DIVISION

| | |
|---|---|
| ELISE M. DURHAM,<br><br>    Plaintiff,<br>  v.<br><br>NATIONAL ASSOCIATION OF BLACK JOURNALISTS,<br><br>    Defendant. | Civil Action File No.: |

## COMPLAINT

Plaintiff Elise M. Durham ("Durham") files this Complaint against Defendant National Association of Black Journalists ("NABJ") for breach of an employment contract, respectfully showing as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Durham resides in Lithonia, Georgia 30058, and submits herself to the jurisdiction of this Court.

2. NABJ is an entity organized and existing under the laws of the State of Maryland, with its primary office located at 1100 Knight Hall, Suite 3100, College Park, Maryland. Defendant may be served with process upon its registered agent, Lambert Flemming, at 9501 Shantha Court, Laurel, MD 20742.

3. Jurisdiction arises under 28 U.S.C. § 1332, based on the parties' diversity of citizenship and an amount in controversy in excess of $75,000.

### FACTS

4. Durham was employed as an executive with the City of Atlanta's Hartsfield-Jackson Atlanta International Airport, a role she successfully occupied for over five years with

progressive advancement.

5. The NABJ is a 501(c)(3) nonprofit organization that advocates on behalf of Black journalists and media professionals around the world. It has over 4,000 members.

6. Durham has been a member of NABJ for 35 years, received the organization's coveted President's Award, and serves as the Parliamentarian of the Atlanta chapter of the organization.

7. Ken Lemon, then the President of NABJ, personally reached out to Durham in June of 2025 to recruit her away from Hartsfield-Jackson to become the Executive Director of NABJ.

8. Following Lemon's initial contact, Durham and representatives of NABJ engaged in negotiations over the terms of her potential employment as its Executive Director.

9. The NABJ Executive Board and an ad hoc Advisory Committee scored Durham along with other candidates on key measurements critical to the responsibilities of the role.

10. The parties' negotiations culminated in a written employment contract titled "Employment Agreement for NABJ Executive Director" ("contract" or "Employment Agreement") executed on August 4, 2025, a copy of which is attached as Exhibit A.

11. Relying upon NABJ's Employment Agreement, Durham notified Hartsfield-Jackson of her resignation on August 4, 2025.

12. Durham's contract with NABJ mandates that Durham could not maintain her employment with Hartsfield-Jackson.

13. Durham was compelled to submit her resignation because she was aware that NABJ intended to announce it had selected Durham has its new Executive Director and she did not want Hartsfield-Jackson to learn of her departure through the media.

14. On August 4, 2025, Durham informed NABJ that she had submitted her notice to Hartsfield-Jackson.

15. On August 5, 2025, the day after the parties executed the contract and immediately following Durham's resignation from Hartsfield-Jackson, the NABJ held a press conference and issued a press release announcing its selection of Durham as its new Executive Director.

16. According to the press release, "Durham was selected after multiple reviews by the NABJ execute board and ad hoc executive director search advisory committee" and championed Durham as "as standout" based on the selection criteria.

17. On August 21, 2025, Errin Haines, the newly elected president of NABJ wrote to Durham on behalf the organization to declare the contract "void and unenforceable."

18. Notwithstanding NABJ's assertion that the contract is "void and unenforceable," it nonetheless offered to "renegotiate your contract for the position of Executive Director under terms and conditions approved by the full Board of Directors …."

19. The term of the contract is three (3) years, from September 1, 2025 – September 1, 2028.

20. The contract establishes Durham's salary for each year, as follows: $195,000 from September 1, 2025 – September 1, 2026; $204,750 from September 1, 2026 – September 1, 2027; and $214,237 from September 1, 2027 – September 1, 2028.

21. The contract further provides for the provision of fringe benefits, including health insurance and a 401(k) plan, a laptop computer, and a cell phone (or cell phone allowance).

22. The contract provides that it may be terminated for cause or without cause. In the event of Durham's termination without cause, "Executive shall be entitled to severance pay in

the amount equal to the unpaid full Base Salary accrued and unaccrued … and accrued and unaccrued vacation to the end of the agreement, plus health care coverage through the length of this contract ….”

23. The NABJ's attempt to unilaterally void the Employment Agreement constitutes a breach of the contract and a termination without cause.

24. The total amount of Durham's accrued and unaccrued base salary is $613,987.

25. NABJ is required to pay $613,987 in severance to Durham, plus health care costs, 401(k) matching contributions, a laptop computer, and a cell phone allowance.

26. Durham has at all times been ready, willing and able to begin her work for the NABJ.

27. The NABJ has prevented Durham from performing her work by terminating her employment without cause.

28. The NABJ has failed and refused to present Durham with a severance and release agreement as contemplated in the contract.

29. According to the NABJ Operating Procedures, all contracts exceeding $10,000 in value require "the signature of the Executive Director and President or Treasurer."

30. Durham's Employment Agreement was signed on August 4, 2025, by the Executive Director and the President.

31. The Executive Director and the President of the NABJ possessed actual authority to execute Durham's Employment Agreement.

32. In addition to their actual authority, the Executive Director and President possessed apparent authority to execute Durham's Employment Agreement.

33. Durham's reliance on the NABJ's officer's authority to extend her a contract offer

was reasonable.

34. Durham reasonably relied upon her Employment Agreement with the NABJ when she resigned her position with Hartsfield-Jackson Atlanta International Airport on August 4, 2025.

35. Durham has suffered financial harm as a direct result of the NABJ's breach of her Employment Agreement.

## BREACH AND INTENTIONAL BREACH OF CONTRACT

36. The above facts support Durham's claim for a material breach of her Employment Agreement.

37. The NABJ's breach of the Employment Agreement is causing and will continue to cause substantial harm to Durham.

38. The NABJ has acted in bad faith and has caused Durham to resort to bringing this lawsuit to enforce her contract rights.

39. The Employment Agreement contemplates that the parties shall pay attorneys' fees and costs of litigation in the event of a breach or threatened breach of the contract. As a result, the NABJ should be responsible for Durham's attorneys' fees as an element of her contract damages.

**WHEREFORE**, Durham seeks the following relief:

I. An award of contract damages for unpaid severance of not less than $613,987, plus prejudgment interest;

II. An award of contract damages for the value of Durham's health insurance premiums, 401(k) matching contributions, cellular telephone costs, and a laptop computer for the duration of the contract;

III.	An award of reasonable attorneys' fees and expenses based on the NABJ's actions taken in bad faith and which necessitated this litigation; and

IV.	Such other and further relief as the Court may find just and appropriate.

**Jury Trial Demand**

Plaintiff demands a trial by jury.

Respectfully submitted,

/s/ Nicholas Woodfield
Nicholas Woodfield, MD Bar 15474
The Employment Law Group, P.C.
1717 K St. NW, Suite 1110
Washington, DC 20006-5345
(202) 261-2812
(202) 261-2835 (facsimile)
nwoodfield@employmentlawgroup.com